[Civ. No. 12345. Third Dist. Feb. 27, 1970.]

MICHAEL A. CURRIERI et al., Plaintiffs and Appellants, v. CITY OF ROSEVILLE et al., Defendants and Respondents.

COUNSEL

Lawrence K. Karlton for Plaintiffs and Appellants.

Robert J. Trombley for Defendants and Respondents.

OPINION

**PIERCE, P. J.**—Petitioners are two policemen who were discharged by the City of Roseville. They petitioned for reinstatement and back pay, contending their discharge was illegal since they were permanent (as distinct from probationary) employees who were discharged without a hearing. The city argued that petitioners were still probationary employees and as such subject to summary discharge. Petitioners appeal from the trial court's denial of their writ of mandate.[1] We hold petitioners' contention that they had achieved permanent civil service status under the charter of the City of Roseville to be correct under the stipulated facts. Having acquired that status they could be discharged only after a hearing held as provided in that charter. Such a hearing was not granted. They therefore are entitled to the writ prayed for.

Petitioners were employed September 1, 1966. In May 1967, while off duty, they were engaged in an altercation in a barroom. After an investigation they were brought before Police Chief Howard. The chief informed them they would be punished by loss of certain accumulated "compensated time-off" credits. They were also informed that their probationary period would be continued for a period of 120 days beyond one year. We assume the accuracy of the chief's testimony that his intention in directing the

---

[1]An alternative writ of mandate was issued by the trial court in this case on December 7, 1967, and on January 26, 1968, a hearing in the matter was held as to petitioner Zwolinski. At that time, by stipulation, the matter of petitioner Currieri was severed on request of his counsel. On December 9, 1968, judgment was entered discharging the alternative writ as to petitioner Zwolinski and denying his petition.

On March 5, 1969, a stipulation reconsolidating the matter of petitioner Currieri with that of petitioner Zwolinski was filed, together with an agreed statement of additional facts, and on April 15, 1969, judgment was entered reconsolidating the two matters and discharging the alternative writ as to petitioner Currieri and denying his petition.

increased probationary period was to permit a more extensive evaluation of petitioners' suitability for permanent employment. Testimony that the chief promised the officers that they would not be discharged because of the May incident was denied by the chief. The trial court resolved the conflict in respondents' favor. Under the substantial evidence rule therefore we disregard the asserted promise.

Petitioners' employment continued beyond the expiration of one year. On October 13, 1967, the two officers were summarily discharged. Chief Howard testified that the discharge was made because he had received a ruling by the city attorney that the chief had no power to extend the period of probation; therefore he had had to make an evaluation of the officers forthwith; the reason he had discharged Officer Zwolinski related directly to the incident in the bar in May 1966. Petitioners' attempts to obtain a hearing on the propriety of their dismissals were met with consistent rejection by the city and its agents. They have exhausted their administrative remedies.

Article XI, section 8½, of the California Constitution vests in a chartered city the plenary authority to provide in its charter, "for the compensation, method of appointment, qualifications, tenure of office and removal of . . . employees." Pursuant to that authority, article VIII of the City of Roseville Charter, entitled "Personnel Administration," provides a comprehensive, general plan for the organization and administration of a personnel system of the municipality. Section 8.04 of that article reads in part relevant here: "The Council shall, upon recommendation of the Personnel Board enact by ordinance a set of rules governing municipal employment which shall among other things provide:

". . . . . . . . . . . . . . . . .

"(f) For a period of probation *not to exceed one year* . . . before . . . appointment is made permanent, during which time, in the case of an original appointment, the probationer may be discharged. . . ." (Italics ours.)

Chapter 18A. of the Code of the City of Roseville sets forth in detail the personnel rules and regulations of the city. "All original . . . appointments shall be tentative and subject to a probationary period. . . . Probationary period for police personnel will be one year." (§ 18A.42.) During the probationary period, which is considered an "intrinsic part of the examination process" (§ 18A.43), an original appointee may be rejected from employment without the right of review of any kind. At the end of the period formal action must be taken by the appointive authority in order to transfer the appointee from probationary to permanent status. Specifically, the appointive authority must have "filed with the personnel officer a statement in

writing that the service of the probationary employee was satisfactory and that his retention in the service is desired." (§ 18A.42.) Without the filing of this statement, employment must cease. "No salary or compensation shall be paid for the services of any probationer following the expiration of the probationary period" unless that statement has been filed. (§ 18A.42.)

## CONFORMITY OF CITY ORDINANCE WITH CHARTER

Respondents read the city's code as being compatible with its charter. If it is not, then the former is void. ■ "The proposition is self-evident . . . that an ordinance must conform to, be subordinate to, not conflict with, and not exceed the [city's] charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state." (5 McQuillin Municipal Corporation (3d ed. 1969 rev.) § 15.19, pp. 79-80, § 15.15, p. 74; 1 Antieau, Municipal Corporation Law, § 3.09, pp. 122, 123, § 5.39, p. 292.38; *Marculescu* v. *City Planning Com.* (1935) 7 Cal.App.2d 371, 373-374 [46 P.2d 308], hear. den.)

■ The language of subdivision f of section 8.04 of article VIII of the City of Roseville's Charter is plain. It provides that the period of probation of a city employee shall "not . . . exceed one year . . . before the appointment is made permanent, during which time . . . the probationer may be discharged. . . ." These provisions carry with them the necessary implication that the probationary employee, although he may be discharged summarily at any time during the probationary year, thereafter automatically attains a permanent status.

■ Rules of statutory interpretation are to be applied to charters. The language of a charter must be given its plain meaning. (5 McQuillin Municipal Corporations (3d ed. 1966 rev.) § 9.22, pp. 682-684, 688.) ■ "[W]hatever is necessarily implied in a statute is as much a part of it as that which is expressed." (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86].) ■ The Roseville ordinance (i.e., code) which requires a specific formal action by the appointive authority in order to transfer the appointee from probationary to permanent status adds another condition to the charter provision and therefore exceeds the power granted by the charter. ■ Petitioners were permanent employees. They became such on September 1, 1967. As permanent police officers they were entitled to notice, a hearing and could only be discharged for cause. (Roseville City Code, §§ 18A.63-18A.66.)

The case before us is not dissimilar from *Wiles* v. *State Personnel Board* (1942) 19 Cal.2d 344 [121 P.2d 673]. On August 13, 1938, petitioner

Wiles acquired a probationary status as a personnel record officer of the national guard. Under its regulations the probationary period was six months. His status as a permanent employee, under the statute covering employment, would have commenced February 12, 1939. He was ill during a substantial part of the probationary period. But he had continued to perform part of his duties substantially until February 10. On that date he was informed by letter that his employment would be terminated *on March 4*. He was paid until that date. Thereafter the personnel board attempted to discharge him. The court held the board acted illegally. It reasoned that the purpose of the probationary period was to allow a fixed period during which "the appointive power is given the opportunity to observe the conduct and capacity of the probationer, and if, in the opinion of that power, the probationer is not fitted to discharge the duties of the position, then he may be discharged by the summary method provided for in the Civil Service Act before he acquires permanent civil service status. [Citation.]" (P. 347.) To demonstrate that such acquisition becomes automatic the opinion also states: "Having concluded that the period of probationary service terminated on February 12, 1939, the question remains whether petitioner was properly rejected on or before that date. The letter of rejection dated February 9, 1939, and served on petitioner on February 10, 1939, opened with the sentence " *'Effective March 4, 1939*, your services as Personnel Officer, California National Guard *will be terminated.'* " The court held that because the appointive power had attempted to exercise summary powers of dismissal as of a date *after* petitioner had become a permanent employee that action was ineffective. (P. 350.) *McGillicuddy v. Civil Service Com.* (1933) 133 Cal.App. 782, 784-787 [24 P.2d 942], and *Schrader* v. *City of Los Angeles* (1937) 19 Cal.App.2d 332, 333-334 [65 P.2d 374] hear. den., are also in point excepting that in those cases, instead of providing a probationary period worded "not to exceed" the specified time, such period was set forth, followed by provision that at the expiration of that period permanent employment became "complete." This court in *Nilsson* v. *State Personnel Board* (1938) 25 Cal.App.2d 699, 705-706 [78 P.2d 467] hear. den., asserts the rule that when the means of terminating a public employee's employment are fixed by law *the method prescribed must be strictly observed*.

*Ferdig* v. *State Personnel Board* (1969) 71 Cal.2d 96 [77 Cal.Rptr. 224, 453 P.2d 728], is relied on heavily by respondents. It does not support their position. On the contrary petitioners can derive some comfort from its ruling. In *Ferdig* the employee, a former member of the merchant marine, obtained employment on the theory he was entitled to a constitutionally granted veteran's preference on a civil service eligibility list. When it was

learned thereafter that petitioner did not have a veteran's status, the appointive power rescinded its appointment. The Supreme Court held that since the appointment was beyond a power granted by the Constitution it was not only the right but the duty of the respondent board to terminate the employment as invalid. ▪ We have pointed out above that a city's charter is to a city, its ordinances and to city officers what the State Constitution is to the state, statutes, and to state officers. Thus, *Ferdig* supports the position we state above that when a city ordinance exceeds the city charter powers, it falls. The judgment is reversed.

Let the writ issue as prayed for. As petitioners concede, from any back payments due there must be deducted petitioners' earnings from other sources. (*Wiles* v. *State Personnel Board, supra,* 19 Cal.2d 344, 352.)

Friedman, J., and Janes, J., concurred.