[Civ. No. 1386. Fifth Dist. Oct. 22, 1971.]

PAULINE R. YOUNG, Plaintiff and Appellant, v.
METROPOLITAN LIFE INSURANCE COMPANY et al., Defendants
and Respondents.

COUNSEL

Francis L. Smee for Plaintiff and Appellant.

Richard A. Perkins as Amicus Curiae on behalf of Plaintiff and Appellant.

Gallagher, Baker & Manock, John J. Gallagher and John E. Fitch for Defendants and Respondents.

OPINION

**BROWN (G. A.), J.**—This is the second time this cause has been before this court. On both occasions the plaintiff-beneficiary under an application for a life insurance policy has been the appealing party. On the former occasion the judgment of the trial court was by the court, sitting without a jury, in favor of the respondent insurance company and its agent. On this occasion the judgment was again for the respondent insurance company and its agent upon a jury verdict.

██ The former opinion (*Young* v. *Metropolitan Life Ins. Co.* (1969) 272 Cal.App.2d 453 [77 Cal.Rptr. 382, 78 Cal.Rptr. 568]) is the law of the case (*Benson* v. *Andrews* (1958) 166 Cal.App.2d 44 at p. 51 [332 P.2d 698]). Essential to the disposition of the questions which we must now decide is the proper interpretation of the former opinion.

The parties are in agreement on the facts summarized in the former opinion, from which we quote:

"The undisputed facts of this case are these: On August 19, 1966, Harley Baker, an agent of the Metropolitan Life Insurance Company, here-

inafter referred to as the company, called on plaintiff's husband, J. R. Young, at Young's office in Porterville, for the purpose of selling him a policy of ordinary life insurance in the amount of $25,000, with double indemnity for accidental death. After some discussion, Young agreed to purchase the policy, naming plaintiff as his beneficiary. Then Baker, who was seated opposite Young at his desk, assisted Young in making out the application. He filled in Young's answers to the questions contained in the part designated as Part 'A,' turned the application around and had Young sign at the bottom of that part. He also had Young sign the authorization to release medical information, and the aviation questionnaire.

"Upon signing the application, Young gave Baker a check in the amount of $890.50 in payment of the first full annual premium for both the ordinary life insurance and the additional $25,000 benefit for accidental death. Baker then detached the conditional receipt which was attached to the application and handed it to Young. Baker sent the rest of the application to Dr. Richard N. Natzke in Porterville who was to complete the medical portion. He also made an appointment for Dr. Natzke to examine Young on August 26, 1966. However, Young was accidentally burned a few days before he could keep the appointment; he died as a result of the accident on September 8, 1966.

"After Young's death plaintiff demanded a payment of $50,000 from the company under the double indemnity provision of the insurance policy. The company rejected her demand and instead tendered $25,000 and a return of the premium, asserting that this was the extent of its liability under Part 'A' of the application and under the conditional receipt which was handed to Young after he paid the premium, because Young died before taking the required medical examination. Part 'A' of the application states: 'The Company will incur no liability by reason of this application, except as may be provided in a Conditional Receipt given on and bearing the same date as this application, until a policy has been delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the Applicant, in which case such policy will take effect as of the date of issue recited therein.'

"The conditional receipt reads in pertinent part as follows:

'(1) All of the following conditions precedent must be fulfilled before the Company has any liability whatsoever under this Paragraph (1):

(a) a payment equal to the full first premium must be made at the time the application is signed by the applicant; and

(b) the person to be insured must have undergone all medical examinations which the Company may require; and

(c) the applicant must have been approved by the Company at its Home Office for the issuance of a policy of life insurance on the plan and for the class of risk and for the amount of insurance applied for; and

(d) there is no misrepresentation in the application. If and only if all the foregoing conditions precedent have been fulfilled and if the person to be insured dies before the policy applied for becomes effective, the Company will pay an amount equal to the amount of life insurance applied for. Any amount paid under this paragraph (1) will be paid to the beneficiary or beneficiaries as expressed in the application made this date.

'(2) If nothing is payable under the terms of Paragraph (1) above, or under the policy applied for or a policy offered in lieu of the one applied for, and if a payment is made equal to the full first premium at the time the application is signed by the applicant, and if the person to be insured dies within 30 days after the completion of Part A of the application as a result of accidental bodily injury caused solely by external violence, the Company will pay, in one sum to the beneficiary or beneficiaries as expressed in the application made this date, the amount of life insurance which would have been payable if the policy applied for had been issued (not including any additional accidental means death benefit), provided, however, that (a) the aggregate amount payable under this provision and similar provisions of all conditional receipts issued by the Company in connection with applications on the person to be insured shall not exceed $25,000, and (b) no such payment will be made if death occurs as the result of suicide.

'(3) If the amount received is less than the full first premium on the policy applied for and if the Company offers, upon payment of the balance of the full first premium, to deliver the policy applied for and the offer is refused, the Company will retain from the amount received the costs incurred for medical examination, the amount of $1 to help defray the cost of issuing such policy and will return the balance, if any, upon surrender of this receipt.

'(4) The amount received will be refunded if the application is declined or if a policy is issued other than as applied for and is not accepted.' " (At pp. 455-457.)

In reversing the judgment this court held that though Part A of the application and the conditional receipt were not ambiguous, insurance contracts are contracts of adhesion and it was the obligation of the respondent

insurance company to bring to the attention of the deceased applicant all provisions and conditions which create exceptions and limitations on coverage. In reversing, the court stated:

"Consequently, the insurer, as the dominant and expert party in the field, must not only draft such contracts in unambiguous terms but must bring to the attention of the insured all provisions and conditions which create exceptions or limitations on the coverage [citation]." (At pp. 460-461.) At page 461 the court concluded: "Applying these principles to the instant case, we are impelled to reverse the judgment. The company offered no evidence to show that the limited liability clause contained in Part 'A' of the application was called to Young's attention or that he read it." In its subsequent opinion denying the respondents' petition for a rehearing the court stated: "The defendant insurance company relied on the conditions contained in the conditional receipt to avoid liability under the insurance policy applied for. Thus, it had the burden of proving that the conditions of the conditional receipt were called to Young's attention. If the company has evidence to prove that these conditions were called to Young's attention, as it maintains, it can present this evidence at the new trial which we have ordered." (At p. 462.)

The crucial question is whether under the judgment in the former decision in this case the agent was required to call to the applicant's attention *all* of the conditions of the application and conditional receipt or only those which under the facts of this case were essential and material to a disposition of this case and upon which the respondent insurance company and its agent relied as a defense.

The interpretation of the former judgment, insofar as its meaning is concerned, is governed by the same rules which apply in ascertaining the meaning of any other writing. (*Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 65 [42 Cal.Rptr. 473].) It is a species of contract and should receive a reasonable interpretation (Civ. Code, § 1643) and an interpretation which reflects the circumstances under which it was rendered (Civ. Code, § 1647).

On the former occasion, as the court points out in that decision, the record was silent as to whether any of the conditions in the application or in the conditional receipt were or were not called to the applicant's attention. While the former opinion is susceptible of the interpretation that all of the conditions of the application and conditional receipt limiting respondent's coverage had to be called to the attention of the applicant, we are of the opinion that the court in that instance was speaking of the general principles applicable to the facts then before it and did not presume to analyze the problem in light of any particular factual situation that

might develop on retrial. More particularly, the court did not have in mind a situation such as developed on retrial, wherein some but not all of the conditions were called to the applicant's attention and those which were called to his attention were sufficient to defeat recovery under the provisions of the application and conditional receipt.

■ At the second trial the agent who sold the insurance to the decedent testified that he did not specifically call to the decedent's attention the five conditions of limitation included in Part A of the application or all of the conditions on the conditional receipt, and that he never explained to him that his double indemnity coverage under the terms of the policy would require company approval of the application before it would become effective. However, the agent did testify that he told the applicant that he would have $25,000 coverage only under the terms of the policy until such time as he completed his physical examination. On this point, at the second trial the agent testified in part: "A. Well, when Mr. Young was leaving the office he turned—and I was a short distance behind him—and said, 'Now if I go out in the street and get run over your company will pay 50,000.00?' And I said, 'No, that's not true, Mr. Young. The company will pay 25,000.00 until after you have completed your physical examination.' " and "A. That's not quite true, Mr. Smee. At the time I handed him the receipt I asked him if he understood the receipt. His answer was: 'I ought to by this time, don't you think?' And at that time I said, 'Then you know you have a temporary coverage of $25,000.00 until after you have completed your physical examination.' And he said, 'I'm not worried about that.' "

On appeal, in support of the verdict we must assume the jury found in accordance with this testimony adduced from the agent; and because the testimony constitutes substantial evidence in support of the conclusion that the applicant was advised of the limited coverage until the medical examination was completed, we have no power to interfere therewith (*Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal.App.3d 378, 382-383 [94 Cal.Rptr. 887]).

■ We are persuaded that the rationale and fundamental nature of the requirement is that the applicant, as a reasonable person, not be misled as to what he is paying for. ■ The facts on retrial demonstrate that the applicant knew he had only $25,000 coverage until he underwent the medical examination. He died before the medical was performed. Ipso facto, he had only $25,000 coverage, which the company has paid. As a reasonable man, the applicant could not have thought that he was buying and paying for more, when he was advised to the contrary.

To be sure, there are other conditions about which he was not advised. For example, before the additional $25,000 was payable, the application had to be approved by the company at its home office. The evidence showed that he was not advised of this provision. If the applicant had died after the medical and before approval of the application by the home office, the beneficiary would have been entitled to the full $50,000. However, the circumstance that other facts could have developed which would have resulted in a recovery of the full $50,000 seems to us to be immaterial to the disposition of this case on the facts now before the court.

In view of what we have said, we see no error in the trial court's ruling denying the judgment notwithstanding the verdict and the motion for a new trial, the latter not being a separate appealable order.

The judgment on the verdict and the order denying the motion for judgment notwithstanding the verdict are affirmed.

Stone, P. J., and Franson, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1971.

---

*Assigned by the Chairman of the Judicial Council.