[Civ. No. 14162. Third Dist. July 17, 1975.]

MICHAEL A. CURRIERI, Plaintiff and Appellant, v. CITY OF ROSEVILLE, Defendant and Appellant.

**COUNSEL**

Francis L. Wood for Plaintiff and Appellant.

William L. Owen, City Attorney, for Defendant and Appellant.

## OPINION

**PARAS, J.**—In *Currieri* v. *City of Roseville* (1970) 4 Cal.App.3d 997 [84 Cal. Rptr. 615], this court held that appellant Michael A. Currieri (hereinafter "appellant") and John Zwolinski,[1] two police officers of the City of Roseville (hereinafter the "City"), had been improperly discharged, and ordered them reinstated to their positions, with back pay. The opinion concluded, "As petitioners concede, from any back payments due there must be deducted petitioners' earnings from other sources. (*Wiles* v. *State Personnel Board, supra,* 19 Cal.2d 344, 352 [121 P.2d 673].)" (4 Cal.App.3d at p. 1003.)

On remand, the trial court awarded appellant damages for loss of salary in the amount of $6,356.10 (from Oct. 15, 1967, when he was fired, through Sept. 14, 1968, when he became a full-time student at Sonoma State College), plus accrued vacation time valued at $248.72, and the monetary equivalent of one-half of all accrued holidays in the amount of $124.36, plus interest and costs. From this the court deducted appellant's gross earnings from other employment in the amount of $400.

The trial court refused to award back pay for the period from September 14, 1968, to May 25, 1970, when appellant actually returned to work, on the ground that he had failed to satisfy his duty to mitigate damages by seeking other employment during that period.

The appeal asserts that:

(1) The trial court's inquiry into the question of mitigation of damages exceeded its jurisdiction upon remand.

(2) A police officer is a public officer and thus has no duty to mitigate damages.

(3) The trial court erroneously placed the burden of proof as to mitigation of damages upon appellant.

The City has filed a cross-appeal, asserting that the trial court erred in awarding additional damages for accrued vacation time and one-half of the holidays during the period of wrongful discharge.

---

[1]Zwolinski is not a party to this appeal.

I

■ Appellant relies upon *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 [242 P.2d 1]: "When there has been a decision on appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform with those directions is void."

In *Hampton,* however, the Supreme Court's opinion had directed the trial court to enter a specific judgment which did not require any additional factual hearing in the trial court. Here, by contrast, this court's order directed the trial court to make a factual determination as to damages.

As stated in a quite similar case, *Carroll v. Civil Service Com.* (1973) 31 Cal.App.3d 561, 564 [107 Cal.Rptr. 557], "While the former opinion is the law of the case insofar as it decided the questions presented (*Young v. Metropolitan Life Ins. Co.* (1971) 20 Cal.App.3d 777, 779 [98 Cal.Rptr. 77]), that opinion did not purport to decide all the possible offsets to which the county may be legally entitled. It was exemplary, not exhaustive. It does not, therefore, answer the question presented on this appeal." Similarly, this court's statement, "from any back payments due there must be deducted petitioners' earnings from other sources," far from being an exhaustive instruction, avoided any impression that the trial court was limited on remand to a mathematical award of back pay without a full inquiry.

Similarly, in *State Bd. of Equalization v. Superior Ct.* (1942) 20 Cal.2d 467 [127 P.2d 4], a judgment had ordered payment of back salaries of wrongfully discharged state civil service employees. No mention was made in the judgment with regard to earnings from other sources. The employer offered to pay back salaries less earnings from other sources. The employees sought an order of contempt which was issued by the trial court. In annulling the contempt order, the Supreme Court stated: "It does not necessarily follow, that because the specified salary was ordered to be paid, no lawful deductions could be made. The judgment should be interpreted, if it may be without doing violence to the express language, so that it does not command that the public officers perform an unlawful act. It is the law, as heretofore stated, that deductions should be made for compensation received in other employment while the employees were unlawfully excluded from their positions. Therefore, to

order officials to pay public funds in violation of that rule would be unlawful. Such expenditure of public funds would be illegal and contrary to law. In the light of those principles we believe the judgment properly interpreted means that there should be deducted from the salaries accruing between the date of the judgment and reinstatement, the compensation received from other employment." (20 Cal.2d at p. 475.)

Accordingly, the trial court acted within its powers in considering the question of mitigation of damages.

## II

General contract principles involving private employers and employees require a wrongfully discharged employee to mitigate his damages by seeking and accepting other comparable employment. (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181-182 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].) There is, however, considerable authority for the proposition that the duty to mitigate damages does not apply to public officials, because the right to public office is statutory, and does not depend upon contract principles. (See, e.g., 150 A.L.R. 100; 4 McQuillin, Municipal Corporation (1968 ed.) § 12.186, p. 55; 41 Cal.Jur.2d, Public Officers, §§ 167-168, at pp. 56-57; 63 Am.Jur.2d, Public Officers, § 402, at p. 875.)

The policy reasons underlying this historical distinction are apparently largely unexplored (see 150 A.L.R. at p. 103), but we have no occasion to explore them in this opinion.[2] ▮ . For whatever be the status of the law as to public officers in California, we hold that appellant's civil service status prevents him from being characterized as a public officer for purposes of mitigation of damages.

---

[2]A good discussion of the conflicting authorities in the context of a classified school employee (bus driver) is contained in *California School Employees Assn.* v. *Personnel Commission* (1973) 30 Cal.App.3d 241 [106 Cal.Rptr. 283]:

"In the absence of some reason other than the simple fact that her employment rights spring from statute and not from contract, petitioner has not shown why public employees should be treated differently from other employees in the matter of mitigation of damages. Moreover we are unable to discern any policy reason for adopting a rule that would impinge a duty on wrongfully discharged private employees to mitigate damages but would not place a similar duty on their public counterparts." (30 Cal.App.3d at p. 248.)

"The reasons for the rule apply with equal force and dignity to public employees. We perceive no reason to distinguish between private and public employees in this context and thus we hold that a wrongfully discharged public employee has a duty to mitigate damages." (30 Cal.App.3d at p. 249.)

It is true that some older cases have accorded police officers the status of public officers. (See, e.g., *Logan* v. *Shields* (1923) 190 Cal. 661, 665 [214 P. 45], (traffic officer); *Petersen* v. *Civil Service Board* (1924) 67 Cal.App. 70, 80 [227 P. 238], (police captain); and *City of Oakland* v. *Lyckberg* (1928) 95 Cal.App. 71 [272 P. 606], (police officer).) But of these, only the *Petersen* case involved the question of mitigation of damages for a policeman protected, like appellant, by civil service. And the *Petersen* court did not decide the question, indicating that it remained to be decided at a later stage of the litigation: " . . . determination of that question [whether Petersen should be allowed to collect two salaries covering the same period of time] is one of law to be presented to and decided by the courts in any action instituted by Petersen to recover the salary for the full period of his suspension, . . ." (*Petersen* v. *Civil Service Board, supra,* 67 Cal.App. at p. 80.)

More recent cases make it clear that policemen who are under civil service protection have a duty to mitigate damages. In *Rexstrew* v. *City of Huntington Park* (1942) 20 Cal.2d 630 [128 P.2d 23], a wrongfully discharged policeman and a fireman of the City of Huntington Park were ordered reinstated by a judgment in mandamus. The police officer was a civil service employee of the city. The Supreme Court applied the mitigation rule as follows: "The record fails to disclose . . . whether respondents have received remuneration from other employment since their discharge. If they have been gainfully employed, any remuneration received from such employment should be deducted from the accrued salary due them. [Citations.]" (20 Cal.2d at p. 634.)

In *City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104 [48 Cal.Rptr. 865, 410 P.2d 369], the California Supreme Court considered the rights of a wrongfully discharged civil service employee of the City of Ukiah. With regard to the measure of damages, the court stated: "It is a well settled rule that a civil service employee who has been unlawfully deprived of his position is entitled to recover the full amount of the salary which accrued to him from the date of his unlawful discharge *to the date of his reinstatement,* less any amounts he earned or might reasonably have earned from other employment during that period. (*Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 616 [39 Cal.Rptr. 739, 394 P.2d 579]; *Stockton* v. *Department of Employment* (1944) 25 Cal.2d 264, 273-274 [153 P.2d 741])." (Italics in original.) (64 Cal.2d at p. 107.) (See also, *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571, 582 [116 Cal.Rptr. 183].)

The trial court correctly found that appellant had a duty to mitigate damages.

## III

■ In his reply brief, appellant states this contention as follows: "The law does not provide for cessation of damages at the time a wrongfully discharged employee stops seeking employment, but provides for a deduction of the amount he might have earned had he continued to seek employment."

The general rules are summarized in *California School Employees Assn. v. Personnel Commission, supra,* 30 Cal.App.3d 241. At pages 249-250, the court states: "The general rule is that the burden of establishing mitigation rests with the employer, and in the absence of proof of other earnings, a presumption arises that the employee has been damaged in the 'sum which he would have received if he had performed the required duties in full.' [Citation.] The measure of recovery of a wrongfully discharged employee is the amount of salary he would have received plus other benefits such as retirement, accumulated vacation and sick time, pay increases and interest on pay increases from date of accrual to judgment, *less the amount which the employer affirmatively proves the employee has earned or with reasonable diligence might have earned from other employment.* [Citations.]" (Italics in original.) (See also, *Parker v. Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d at p. 181.)

There is nothing in the record to suggest that the trial court failed properly to impose the burden of proof upon the City. The contrary appears. The court's opinion reflects the basis of its ruling:

"With respect to this plaintiff, the primary question of concern is whether or not he made reasonable [efforts] to obtain other employment neither different from nor inferior to that from which he was discharged, during the period from discharge to reinstatement.

"It is uncontradicted that plaintiff became a full time student and that upon his eventual reinstatement he immediately resigned to return to full time school attendance. While the determination to obtain an education is commendable, it is quite apparent that at some point in time prior to reinstatement the *plaintiff actually formed the intent to pursue a scholastic career as opposed to his career as a police officer. In other words, it is the opinion of the Court that had this plaintiff been reinstated at some*

*earlier date he would have resigned to continue school.* Plaintiff became a full time student in September of 1968. He testified that he did not even seek part time jobs after this time. While there is no requirement one mitigate by part time work, the failure to seek any employment again is an example of his intent. It is also true he had only worked as a police officer for some thirteen months before discharge, which is important only to indicate his police career was of relatively short duration, hence the decision to become a full time student is not surprising. It would seem the duty of mitigation is a continuing duty, within reasonable limits of course, and that to seek and attend to a full time non-paying occupation is not within the concept of mitigation." (Italics added.)

There was substantial evidence to support the trial court's conclusion. In addition to that specified in the quoted portion of the court's opinion, there was evidence that a police officer's job with the City of Rocklin was offered to and rejected by appellant in June 1968. Two months after his discharge, Officer Zwolinski took an identical position with Rocklin, and after his reinstatement, he resigned from the Roseville Police Department in order to continue working at Rocklin. While there was some testimony to indicate that the Rocklin position was not comparable or substantially similar to the Roseville position, in which case appellant would have been under no duty to accept it (see *Parker v. Twentieth Century-Fox Film Corp., supra,* 3 Cal.3d at p. 182), this only created a conflict in the evidence which the trier of fact properly resolved. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4236 et seq.; *California School Employees Assn. v. Personnel Commission, supra,* 30 Cal.App.3d at pp. 250-253.)

IV

Respondent has cross-appealed from that portion of the judgment which awards appellant the monetary equivalent of vacation benefits and one-half of holidays during the period of wrongful discharge, over and above straight salary for such period. The parties have specifically agreed that "vacation and holiday benefits of the City of Roseville merely entitle an employee to time off with straight salary and ... do not increase the amount of annual salary." Thus it is clear that had appellant not been wrongfully discharged, he would not have received these sums. It follows that the trial court erred in awarding them. A wrongfully discharged employee, both private and public, is entitled to damages which tend to make him whole; in short, compensatory damages. (Civ. Code, § 3300.) As with recovery in tort

(Civ. Code, § 3333), such damages represent just compensation for the loss or injury sustained by the plaintiff *and no more. (Munger* v. *Moore* (1970) 11 Cal.App.3d 1, 11 [89 Cal.Rptr. 323].) (Italics added.) Since appellant did not lose these sums, their allowance as additional damages, being noncompensatory, would represent a pro-tanto double recovery. (Cf. *Fuller* v. *Capitol Sky Park* (1975) 46 Cal.App.3d 727 [120 Cal.Rptr. 131].)

Appellant points to language in *California School Employees Assn.* v. *Personnel Commission, supra,* 30 Cal.App.3d 241, 249, which was repeated in *Carroll* v. *Civil Service Com., supra,* 31 Cal.App.3d at page 565: "The measure of recovery of a wrongfully discharged employee is the amount of salary he would have received *plus other benefits such as retirement, accumulated vacation and sick time,* pay increases, and interest on pay increases . . . ." (Italics added.) It is obvious, however, that the words "he would have received" impliedly modify the "other benefits" and that the court in neither case intended a gratuitous award of unincurred financial losses. Such items are indeed recoverable in cases where the employment contract calls for them actually to be paid if not obtained in kind.[3] Otherwise, there being no loss, no compensation can be awarded. (See *Nicholson* v. *Amar* (1935) 7 Cal.App.2d 290 [45 P.2d 697].)

The judgment is modified by deletion therefrom of $248.72 for vacation time and $124.36 for holiday time, together with interest thereon; and as so modified, the judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.

---

[3]E.g., assume the employment contract provides for two weeks' paid vacation annually, to be paid for as additional compensation if not used; or that it provides for paid holiday time off, but double time if the holidays are actually worked. In both such cases, additional damages would be supported.