Filed 7/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN ST. CROIX, as Executive Director, etc., et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondent;<br><br>ALLEN GROSSMAN,<br><br>        Real Party in Interest. | A140308<br><br>(San Francisco City & County Super. Ct. No. CPF-13-513221) |

San Francisco resident Allen Grossman, relying on state and local public records laws, sought to obtain from John St. Croix, executive director of the San Francisco Ethics Commission (Ethics Commission or commission), documents pertaining to the development of certain commission regulations.  St. Croix provided more than 120 documents, but, citing the attorney-client privilege (see Evid. Code, §§ 952, 954), withheld 24 written communications between the commission and the San Francisco City Attorney's Office.

Grossman argued, and the trial court held, that a provision of the San Francisco Sunshine Ordinance (Sunshine Ordinance or ordinance) (S.F. Admin. Code, ch. 67) required disclosure of the documents, even if they otherwise would be protected by the privilege.  St. Croix and the commission (to whom we sometimes refer collectively as City) petition for a writ of mandate, contending City's charter incorporates the attorney-client privilege and supersedes any contrary ordinance provision.  We agree, and we hold

the trial court erred in ordering disclosure of the documents.  We therefore grant City's writ petition.[1]

## I.  BACKGROUND

In October 2012, Grossman submitted a request under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.)[2] and the Sunshine Ordinance for documents relating to the commission's regulations governing complaints alleging violations of the ordinance.  As part of this request, Grossman expressly sought production of written communications between the Ethics Commission and the city attorney's office.  Grossman requested drafts of the commission's Sunshine Ordinance regulations, a September 14, 2012 staff report about the regulations, and all documents relating to "[t]he preparation, review, revision and distribution of all prior drafts and final versions of the Draft Amendments and Staff Report, *including, without limitation, emails, memoranda, notes, letters or other correspondence or communications to or from the San Francisco City Attorney, any Deputy City Attorney or any other person in the Office of the San Francisco City Attorney*."  (Italics added.)

St. Croix and his staff produced more than 120 documents, six of which were partially redacted.  St. Croix withheld other documents in their entirety on the grounds they were protected by the attorney-client privilege and the attorney work product doctrine.  The 24 withheld documents include (1) 15 written requests from the commission's staff to the city attorney's office for legal advice about the commission's proposed regulations, and (2) nine written responses by the city attorney's office to the commission's staff, providing advice about the proposed regulations.

Grossman petitioned for a writ of mandate in the trial court, arguing a provision of the Sunshine Ordinance (S.F. Admin. Code, § 67.24, subd. (b)(1)(iii)) compels disclosure of the documents at issue, even if they would otherwise be protected by privilege.  That

---

[1] Because we conclude the documents are protected by the attorney-client privilege, we need not address City's argument that some of the documents are also protected by the attorney work product doctrine.

[2] All statutory references are to the Government Code unless otherwise stated.

provision of the ordinance states that, "[n]otwithstanding any exemptions otherwise provided by law," the following documents are subject to disclosure under the ordinance: "(iii) Advice on compliance with, analysis of, an opinion concerning liability under, or any communication otherwise concerning the California Public Records Act, the Ralph M. Brown Act, the Political Reform Act, any San Francisco Governmental Ethics Code, or this Ordinance [(i.e., the Sunshine Ordinance)]." (S.F. Admin. Code, § 67.24, subd. (b)(1).)[3]

City opposed disclosure, contending the San Francisco City Charter (charter), which creates the office of the city attorney and specifies his or her duties, incorporates the attorney-client privilege, and the ordinance cannot validly modify the charter by barring City from asserting the privilege.

The trial court granted Grossman's petition, holding San Francisco Administrative Code section 67.24, subdivision (b)(1)(iii) required production of the 24 attorney-client communications withheld by St. Croix. The court stated City's argument that the charter superseded the ordinance provision, an issue that both parties had briefed and argued, was "not properly before" the court.

St. Croix and the commission petitioned this court for a writ of mandate (see § 6259, subd. (c)) and moved for a stay of the trial court's order. We stayed the court's order pending resolution of this writ proceeding, and later issued an order to show cause.

## II. DISCUSSION

### A. The Attorney-Client Privilege and Public Records Laws

Our Supreme Court has stated: "The attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . .' The privilege 'has been a hallmark of Anglo-American jurisprudence for

---

[3] The trial court took judicial notice of San Francisco Administrative Code section 67.24. (See Evid. Code, § 452, subd. (b); *Madain v. City of Stanton* (2010) 185 Cal.App.4th 1277, 1280, fn. 1 [taking judicial notice of relevant portions of municipal code].)

3

almost 400 years.' [Citation.] Its fundamental purpose 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. [Citation.] . . . [¶] Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." [Citations.]' [Citation.] '[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' " (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 732.)

The scope and availability of the attorney-client privilege are governed by statute. (See Evid. Code, § 950 et seq.) "Courts may not add to the statutory privileges except as required by state or federal constitutional law [citations], nor may courts imply unwritten exceptions to existing statutory privileges." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 (*Roberts*); see Evid. Code, § 911.)

In the context of public records requests, the CPRA expressly exempts from disclosure documents that fall within the statutory attorney-client privilege. The CPRA defines "public record" as a "writing containing information relating to the conduct of the people's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e).) The CPRA exempts certain public records from disclosure, including "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254, subd. (k).) "By its reference to the privileges contained in the Evidence Code, . . . the [CPRA] has made the attorney-client privilege applicable to public records." (*Roberts, supra,* 5 Cal.4th at p. 370.)

4

In *Roberts*, the Supreme Court emphasized the importance of the attorney-client privilege in protecting the confidentiality of written communications between a public agency and its counsel. (*Roberts, supra,* 5 Cal.4th at pp. 380–381.) The *Roberts* court held that, although the Ralph M. Brown Act (Brown Act; § 54950 et seq.) establishes open meeting requirements applicable to local governing bodies (see §§ 54950, 54953) and abrogates the attorney-client privilege (with certain exceptions) for the purposes of those open meeting requirements (see § 54956.9), the Brown Act does not abrogate the privilege applicable to written communications under the CPRA. (*Roberts,* at pp. 373–374, 377.) The *Roberts* court rejected the argument that, in the public agency context, the attorney-client privilege should not apply or should be limited to situations involving pending litigation. (*Id.* at pp. 379–380.) Such arguments were "inconsistent with the decision of the Legislature in enacting the [CPRA] to afford public entities the attorney-client privilege as to writings to the extent authorized by the Evidence Code." (*Id.* at p. 380.)

## B. The Charter Incorporates the State Law Attorney-Client Privilege and Supersedes the Contrary Ordinance Provision

City argues provisions of its charter establishing the office and duties of the city attorney (1) incorporate the protections of the state law attorney-client privilege for written communications between the city attorney and his or her clients, and therefore (2) supersede the provision of the Sunshine Ordinance purporting to compel disclosure of documents falling within the scope of the privilege. We agree.

### 1. The Charter Incorporates the Privilege

"The City Charter represents the supreme law of the City and County of San Francisco, subject only to conflicting provisions in the United States and California Constitutions or to preemptive state law. [Citation.] The provisions of the City Charter supersede all municipal laws, ordinances, rules or regulations inconsistent therewith." (*Stuart v. Civil Service Com.* (1985) 174 Cal.App.3d 201, 206.) "Generally, the same principles of construction applicable to statutes apply to the interpretation of municipal charters. [Citations.] The courts must always look first to the express language of the

5

statute to ascertain its meaning." (*United Assn. of Journeymen v. City and County of San Francisco* (1995) 32 Cal.App.4th 751, 760.)

City's charter designates the city attorney as an elected officer of City and specifies the duties of the office. (S.F. Charter, §§ 6.100, 6.102.)[4] The charter states the city attorney must "[r]epresent the City and County in legal proceedings with respect to which it has an interest." (S.F. Charter, § 6.102(1).) Under certain circumstances, the city attorney also must represent individual City officers and officials in litigation. (S.F. Charter, § 6.102(2).) The city attorney shall initiate litigation when "a cause of action exists in favor of" City. (S.F. Charter, § 6.102(3).) Significantly for the present case, the city attorney must, "[u]pon request, provide advice or written opinion to any officer, department head or board, commission or other unit of government of" City.[5] (S.F. Charter, § 6.102(4).) The city attorney also must "[m]ake recommendations for or against the settlement or dismissal of legal proceedings" (S.F. Charter, § 6.102(5)) and must review and approve as to form "all surety bonds, contracts and, prior to enactment, all ordinances." (S.F. Charter, § 6.102(6).) The charter requires the city attorney to establish a claims bureau "to investigate, evaluate and settle for the several boards, commissions and departments all claims for money or damages." (S.F. Charter, § 6.102(9).)

The above charter provisions, by establishing the office and responsibilities of the city attorney, establish an attorney-client relationship between the city attorney on the one hand, and City and its officers and agencies (including the Ethics Commission) on the other. As noted above, state law establishes that the privilege's protection of the

---

[4] The trial court took judicial notice of section 6.102 of the San Francisco Charter. We grant the parties' request that we take judicial notice of section 6.100 of the San Francisco Charter. (See Evid. Code, §§ 451, subd. (a) [judicial notice of city charter provisions], 459, subd. (a).)

[5] In addition to this provision requiring the city attorney to provide advice to all boards and commissions, section 15.102 of the San Francisco Charter specifies the city attorney is the legal advisor to the Ethics Commission. We grant the parties' request that we take judicial notice of sections 15.100 through 15.102 of the San Francisco Charter.

confidentiality of written attorney-client communications is fundamental to the attorney-client relationship, in the public sector as well as in the private sector, and is vital to the effective administration of justice. (See Evid. Code, § 950 et seq.; *Roberts, supra,* 5 Cal.4th at pp. 380–381.) We therefore conclude the charter incorporates the state law attorney-client privilege for written communications between the city attorney and his or her clients.

In reaching this conclusion, we are guided by *Welfare Rights Organization v. Crisan* (1983) 33 Cal.3d 766 (*Welfare Rights*), in which our Supreme Court emphasized the importance of confidential communications to a relationship similar to that between attorney and client. The *Welfare Rights* court concluded a statute (Welf. & Inst. Code, § 10950) authorizing recipients of public benefits to be represented by laypersons in administrative proceedings necessarily implied the existence of a privilege protecting communications between the lay representative and the client. (*Welfare Rights,* at pp. 770–771.) The statute specified a benefits applicant or recipient could appear " 'in person *or through an authorized representative.*' " (*Id.* at p. 770, italics added by *Welfare Rights*.) The Supreme Court held that "the considerations which support the privilege are so generally accepted that the Legislature must have implied its existence as an integral part of the right to representation by lay persons." (*Id.* at p. 771.) Similarly, here, we conclude the state statutory privilege's protection of attorney-client communications is an integral part of the attorney-client relationship created by the charter.[6]

---

[6] In addition to specifying the above duties of the city attorney, the charter states that, "[s]ubject to the powers and duties set forth in" the charter, the city attorney and other specified elective officers "shall have such additional powers and duties prescribed by state law for their respective office." (S.F. Charter, § 6.100.) City argues this provision requires the city attorney to comply with state laws requiring attorneys to protect their clients' confidences. (See Bus. & Prof. Code, § 6068, subd. (e)(1); Evid. Code, § 955; see also State Bar Rules Prof. Conduct, rule 3-100(A).) Because we conclude the charter's specification of the city attorney's duties creates an attorney-client relationship between the city attorney and City agencies, and incorporates the attorney-client privilege as an integral part of that relationship, we do not address whether section

Grossman argues we should construe the charter narrowly to avoid any limitation on the public's right of access.  He cites article I, section 3, subdivision (b)(2) of the California Constitution, which states:  "A statute, court rule, or other authority . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. . . ."  (See *Sander v. State Bar of California* (2013) 58 Cal.4th 300, 312–313.)  That provision does not assist Grossman.  We have concluded above that the charter establishes an attorney-client relationship between the city attorney and City agencies.  Grossman does not dispute that conclusion and does not claim that a narrower construction of the charter would produce a different result.  Under state law, the attorney-client privilege is a "generally accepted" and "integral" part of the attorney-client relationship.  (See *Welfare Rights, supra,* 33 Cal.3d at p. 771.)  Accordingly, we have further concluded above that the charter necessarily incorporates the state law attorney-client privilege as a part of the attorney-client relationship it creates.  That conclusion does not result from a broad construction of the charter's provisions (which unambiguously create an attorney-client relationship) and would not be altered by adopting a narrower construction of those provisions; instead, our holding just reflects the well-established centrality of the privilege to the attorney-client relationship.[7]

Grossman also contends we should construe the charter narrowly to avoid a conflict with the ordinance.  But the case he cites, *People v. Kennedy* (2001) 91 Cal.App.4th 288, 290, 297, involved an alleged conflict between two statutory provisions appearing in different codes, the Business and Professions Code and the

---

6.100 of the San Francisco Charter provides an independent basis for granting City's petition.

[7] We also note article I, section 3, subdivision (b), which was added to the Constitution by Proposition 59, a 2004 ballot measure (see *Alvarez v. Superior Court* (2007) 154 Cal.App.4th 642, 656), specifies it "does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records . . . that is in effect on the effective date of this subdivision . . . ."  (Cal. Const., art. I, § 3, subd. (b)(5)), such as the preexisting statutory exemption for privileged materials (see Evid. Code, § 954; Gov. Code § 6254, subd. (k); *Roberts*, *supra*, 5 Cal.4th at pp. 370–371).

Health and Safety Code. In that context, a court should "adopt, if possible, a construction which avoids apparent conflicts between different statutory provisions . . . ." (*People v. Kennedy*, at p. 297.) That principle does not establish a court must construe a city charter to conform to a municipal ordinance. To the contrary, when a city enacts an ordinance or takes other action, it cannot contravene its charter. (See *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171 [charter city may not act in conflict with its charter; "Any act that is violative of or not in compliance with the charter is void."]; see also *Rivero v. Superior Court* (1997) 54 Cal.App.4th 1048, 1050–1051, 1058–1060 [application of provision of San Francisco Sunshine Ordinance contravened state statute].) In any event, as noted above, construing the charter's provisions more narrowly would not change our analysis. The charter unambiguously creates an attorney-client relationship between the city attorney and the commission, and the state law attorney-client privilege is a fundamental aspect of that relationship.

Grossman next claims there is no conflict between the charter's establishment of an attorney-client relationship and the ordinance's purported elimination of the privilege for certain attorney-client communications, because "attorney-client communications are not necessarily confidential," especially for public sector attorneys. Grossman notes that (as we have discussed above) the Brown Act requires that most meetings of local governing bodies be public and limits the attorney-client privilege in that context (see § 54956.9). But, as we have also explained above (and as Grossman does not appear to dispute), the Brown Act does not limit the privilege as to *written* communications between public sector attorneys and their clients, such as the materials at issue here. Written attorney-client communications remain privileged and exempt from disclosure pursuant to the CPRA. (Evid. Code, § 954; Gov. Code § 6254, subd. (k); *Roberts, supra,* 5 Cal.4th at pp. 377, 381.)

Grossman argues the Brown Act's provisions nevertheless support a conclusion that, at least in the public sector, confidentiality is not fundamental to the provision of legal advice. Not so. California law recognizes that "public entities need confidential legal advice to the same extent as do private clients." (*Roberts, supra,* 5 Cal.4th at

9

p. 374.)  Our determination that the charter incorporates the state law attorney-client privilege and its protection of written attorney-client communications is thus consistent with the "balance between the competing interests in open government and effective administration [that] has been struck for local governing bodies in the [CPRA] and the Brown Act." (*Roberts,* at p. 381.)

### 2.    The Charter Supersedes the Contrary Ordinance Provision

Because the charter incorporates the attorney-client privilege, an ordinance cannot eliminate the privilege for a class of communications between the city attorney and his or her clients.  " '[A]n ordinance must conform to, be subordinate to, not conflict with, and not exceed the [city's] charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state.' " (*Currieri v. Roseville* (1970) 4 Cal.App.3d 997, 1001.)  To the extent San Francisco Administrative Code section 67.24, subdivision (b)(1)(iii) purports to compel disclosure of materials that fall within the scope of the attorney-client privilege, such as the written communications between the Ethics Commission and the city attorney at issue here, it conflicts with the charter's protection of such materials.  The trial court therefore erred in ordering disclosure of the documents pursuant to the ordinance.[8]

Seeking to avoid this result, Grossman argues that, because San Francisco Administrative Code section 67.24, subdivision (b)(1)(iii) purports to require disclosure of the materials at issue, they were "never confidential in the first place, and no privilege ever attached."  He alternatively contends that, if the privilege did apply, the voters could "waive" it by enacting the ordinance.  We reject both arguments.  Because the charter incorporates the privilege, an ordinance (whether enacted by City's board of supervisors or by the voters) cannot eliminate it, either by designating as not confidential a class of materials that otherwise would be protected by the privilege, or by waiving the privilege

---

[8] Because we conclude the charter supersedes the disputed ordinance provision, we do not address City's argument that the ordinance provision is "invalid for [the] independent reason" that it would "impermissibly interfere" with the city attorney's performance of his or her duties.

as to that category of documents; only a charter amendment can achieve that result.  (See *City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 102, 104–105 [initiative ordinance cannot limit effect of charter; electorate has no greater power to legislate by ordinance than City's board of supervisors possesses].)

Grossman also cites a provision of the CPRA, section 6253, subdivision (e), that permits localities to provide greater access to records than the CPRA itself requires. Section 6253, subdivision (e) states:  "Except as otherwise prohibited by law, a state or local agency may adopt requirements for itself that allow for faster, more efficient, or greater access to records than prescribed by the minimum standards set forth in [the CPRA]."  But section 6253, subdivision (e) does not purport to authorize a locality to enact an ordinance about records access that conflicts with the locality's governing city charter.  To change local law in this circumstance, a charter amendment is necessary. (See *City and County of San Francisco v. Patterson, supra,* 202 Cal.App.3d at pp. 102, 104–105.)

Finally, Grossman appears to suggest the privilege should protect the disputed materials from disclosure only if the commission demonstrates disclosure of those particular documents would impede the city attorney's representation of the commission. We disagree.  As noted, when the privilege applies, as it does here under the charter, it " 'is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' "  (*Costco Wholesale Corp. v. Superior Court, supra,* 47 Cal.4th at p. 732.)

## C.    The Alleged Procedural Impropriety of the Petition

The CPRA provides that, if a trial court orders a "public official" to disclose records, a "party" to the trial court proceeding may seek appellate review by filing a writ petition.  (§ 6259, subds. (a)–(c).)  Grossman directed his underlying records request solely to St. Croix, but then named both St. Croix and the Ethics Commission as parties in his petition for a writ of mandate in the trial court.  As a result, both St. Croix and the commission are parties to the petition in this court.  Grossman now argues the instant petition is "void," because the commission did not meet publicly to authorize its filing.

11

We disagree. The general provisions of the Brown Act cited by Grossman (§§ 54952.6, 54954.2, subd. (a), 54956.9) do not establish a meeting by the members of an affected local commission or other body is a prerequisite to the exercise of the appellate remedy expressly specified in the CPRA.

**D.  The Parties' Requests for Judicial Notice**

As noted, the trial court took judicial notice of Section 67.24 of the San Francisco Administrative Code and section 6.102 of the San Francisco Charter; we have taken judicial notice of sections 6.100 and 15.100 through 15.102 of the San Francisco Charter. We deny the parties' requests for judicial notice of other ordinance provisions, other charter provisions, and other items, because those materials are not relevant to our disposition of this matter. Accordingly, (1) City's November 22, 2013 request for judicial notice is granted as to exhibit B (S.F. Charter § 6.100) and exhibit F (S.F. Charter §§ 15.100–15.102) and is otherwise denied; (2) Grossman's December 23, 2013 request for judicial notice is granted as to (a) the portion of exhibit 1 that includes section 67.24 of the San Francisco Administrative Code and (b) the portion of exhibit 2 that includes sections 6.100, 6.102, and 15.100 through 15.102 of the San Francisco Charter, and is otherwise denied; (3) City's January 14, 2014 request for judicial notice is denied; (4) Grossman's March 7, 2014 request for judicial notice is granted as to (a) the portion of exhibit 1 that includes section 67.24 of the San Francisco Administrative Code and (b) the portion of exhibit 2 that includes sections 6.100, 6.102, and 15.100 through 15.102 of the San Francisco Charter, and is otherwise denied; and (5) City's April 1, 2014 request for judicial notice is denied.

### III.  DISPOSITION

The petition for a writ of mandate is granted. Let a peremptory writ of mandate issue directing respondent court to vacate the order granting Grossman's petition for a writ of mandate, and to enter a new order denying Grossman's petition. Upon finality of this decision, the temporary stay order is vacated. Costs in this original proceeding are awarded to St. Croix and the Ethics Commission.

                                                            _____

                                                               Becton, J.*

We concur:


_____

 Dondero, Acting P.J.


_____

 Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*St. Croix v. Superior Court, A140308*

Trial Court:    San Francisco County Superior Court

Trial Judge:   Hon. Ernest H. Goldsmith

Counsel:

City and County of San Francisco Office of the City Attorney, Dennis J. Herrera, City Attorney, Therese M. Stewart, Chief Deputy City Attorney, Vince Chhabria, Chief of Appellate Litigation, Andrew N. Shen and Joshua S. White, Deputy City Attorneys for Petitioners.

No appearance for Respondent.

Kerr & Wagstaffe LLP, Michael Kai Ng and Jasmine K. Singh for Real Party in Interest.