[No. A020552. First Dist., Div. Three. Nov. 8, 1985.]

RAY STUART et al., Plaintiffs and Appellants, v.
CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Defendants and Respondents.

**COUNSEL**

Stewart Weinberg, Van Bourg, Allen, Weinberg & Roger and Van Bourg, Weinberg, Roger & Rosenfeld for Plaintiffs and Appellants.

George Agnost, City Attorney, and Stephanie M. Chang, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**WHITE, P. J.**—Ray Stuart and Sonja Dale appeal from an order denying their petition for mandate and the judgment entered thereon in favor of respondents. The parties agree that the sole issue is whether section 9.16 of

the rules of the San Francisco Civil Service Commission (Civil Service Commission) is in conflict with section 8.323 of the Charter of the City and County of San Francisco (City Charter). We conclude, contrary to the trial court, that the two provisions are in conflict; we therefore reverse.

The facts are not in dispute. Appellants participated in oral civil service examinations for positions as health workers III and IV. The oral examinations were conducted by qualifications appraisal boards in accordance with Civil Service Commission rule 9.16, which specifically governs the procedures for such examinations. A digest of the procedures for protesting the examination, as set forth in rule 9.16(c) of the Civil Service Commission rules, was posted outside the examination room. The digest notified all candidates that after interviews were completed, the candidates' ratings would be available for inspection for a minimum period of two days, and that challenges to the examination procedure could only be filed at three specific stages of the examination process: prior to participation in the interview; within two business days following the interview; and during the two-day inspection period. Also posted outside the examination room was a notice that the dates for inspection and protest of the composite qualifications appraisal board ratings would be December 9 and 10, 1981.

John Hinz, a personnel analyst employed by the City and County of San Francisco, instructed each candidate to read the digest of the protest procedure and the notice of the inspection/protest period before entering the examination room; he then asked each candidate whether they had read and understood the posted notice and digest of procedures. At the commencement of each interview, Hinz introduced each candidate to the qualifications appraisal board and, in the presence of the board members, again asked each candidate whether he or she had read and understood the digest of the protest procedure and the notice of the inspection/protest period posted outside the examination room. Both of the appellants responded affirmatively when so questioned. Neither of the appellants requested inspection of the ratings or filed any protest to the examinations during the inspection/protest period on December 9 and 10, 1981.

A tentative list of eligible candidates was posted in January 1982 for a period of approximately five days. On or about January 22, 1982, appellants filed protests to their ratings on the tentative eligible list, claiming that their ratings were not "credible," and that there were "procedural irregularities" in the conduct of the examinations, including the fact that they were not taped in full. These protests were denied in their entirety on the sole grounds that they had not been filed during the two-day inspection/protest period.

On March 12, 1982, appellants filed a petition for writ of mandate, seeking to require respondents to refrain from certifying a list of eligibles on

the basis of the challenged examinations or from certifying as permanent employees any individuals on the tentative list of eligibles, "until such time as [respondents] have had an opportunity to inspect all documents as provided for in Charter § 8.323 of the City and County of San Francisco, and have had a hearing based upon their protests to those examinations." The trial court denied the petition for writ of mandate, concluding that Civil Service Commission rule 9.16 did not violate the provisions of City Charter section 8.323, appellants' protests had been untimely, and they had failed to make timely requests for inspection of the examination materials.

Respondents concede that the only issue on appeal is whether Civil Service Commission rule 9.16 is in conflict with City Charter section 8.323. Yet respondents fail to address this issue squarely, instead placing their emphasis on the procedural requirements of rule 9.16, the public policy reasons for those requirements, and appellants' admitted failure to comply with them.

The relevant portions of the Civil Service Commission rules at issue state that all challenges to a qualifications appraisal interview must take place during the "minimum period of two (2) working days" set aside for inspection of the examination ratings, and that in the absence of such a protest, "later challenges shall be precluded." (Civil Service Com. rules, rule 9.16 (c).)[1] The notice posted outside the examination room set forth these same requirements.

---

[1]At the time of the events at issue in this litigation, rule 9.16(c) of the Civil Service Commission stated in pertinent part: "1. After the qualifications appraisal interviews for an examination are computed, such composite ratings shall be available for a minimum period of two (2) working days following the completion of the computations for all participants or for some other two (2) day period set by the General Manager, Personnel, provided that the candidates are advised of the dates, during which period each participant may inspect their own ratings, provided that the identity of the examiner giving any mark or grade in an oral test shall not be disclosed.

"2. Any challenges shall be filed in writing within the inspection period and shall be limited to: a) claimed inconsistencies or failure of the qualifications appraisal board to apply uniform standards, b) any questions propounded by the panel of examiners which occur during a qualifications appraisal interview which require an answer in conflict with any federal, state, or city and county laws, rules or regulations which apply to the government of the City and County of San Francisco and/or the San Francisco Civil Service Commission. The Civil Service Commission shall not consider challenges merely because a candidate believes she/he is entitled to a higher score. The Commission will not substitute its judgment for the judgment of the qualifications appraisal interviewers. Ratings by a qualifications appraisal board of less than the minimum passing score shall not be raised to more than the minimum passing score.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"5. In the absence of a challenge under this section or upon a decision by the Civil Service Commission under this section, later challenges shall be precluded."

On the other hand, section 8.323 of the City Charter specifically sets forth a different procedure.[2] The language in the City Charter is in conflict with the rules established by the Civil Service Commission in several respects.

First, the City Charter provides for an inspection period of "a minimum of three working days for entrance examinations or five working days for promotional . . . examinations." The Civil Service Commission rules, on the other hand, provide a period for inspection and protest of a minimum of only two working days.

Second, the inspection period provided by the City Charter is for review of the tentative list of eligibles, together with documents supporting the eligibles' rank and score. The inspection period provided by the Civil Service Commission rules is only for the composite ratings, which are computed following the examinations but *prior to* the formulation of the tentative list of eligibles.

Finally, although section 8.323 of the City Charter expressly provides for "investigation and action" on "protests" received "during the posting period," the rules of the Civil Service Commission disallow any protests after the two-day period provided for inspection of the computed composite ratings, even though the tentative list of eligibles is posted after this. In short, no opportunity is provided by the Civil Service Commission's rules for protest following posting of the tentative list of eligibles, even though the City Charter expressly provides for just such an inspection and protest period.

Respondents assert that "[t]he protest period granted by San Francisco Charter § 8.323 is clearly for a limited purpose," and that "San Francisco

---

[2]As amended November 1978, section 8.323 of the City Charter provides, in pertinent part, as follows: "Following the completion of any examination, a tentative list of eligibles shall be posted for the inspection of the public and of participants. The posting period shall be for a minimum of three working days for entrance examinations or five working days for promotional or combined entrance and promotional examinations. . . . Inspection of papers shall include all documents supporting the eligible's rank and score, except neither the identity of the examiner giving any mark or grade in an oral examination nor the questions and answers on any continuous or standardized entrance or concurrent entrance and promotive written test, shall be provided. Only participants in the examination may review the questions used in the examination. If no protests are received during the posting period, the eligible list is automatically adopted. If protests are received during the posting period, the investigation and action of the general manager, personnel, shall be expedited so that final adoption of the eligible list is not delayed beyond 60 days after the date of posting. Eligibles who, as a result of their ranking, would receive a notice of appointment regardless of the outcome of the protest(s) may be offered employment from adopted lists pending the resolution of any protest(s) and amendment to the adopted eligible list."

Charter § 8.323 in no way provides that candidates may raise any and all complaints to the examination at the final phase of the examination process when the proposed eligible lists is [*sic*] posted." We disagree. The language of the City Charter makes no exceptions to the kinds of protests which may be made during the inspection period following posting of the tentative list of eligibles.

Respondents also contend that "[t]here is nothing in San Francisco Charter § 8.323 which prohibits the Civil Service Commission from adopting reasonable rules governing protests during intermediate phases of the examination process which promote an orderly and efficient administration of the examination process," and from this conclude that Civil Service Commission rule 9.16 does not violate the City Charter. There is no substance to this conclusion. By providing that all protests must be made during the two-day inspection period following computation of composite ratings and not later, the Civil Service Commission rule in question precludes an individual from protesting during the period following posting of the tentative list of eligibles. This is in direct conflict with the provision in section 8.323 of the City Charter for filing protests during the posting period of the tentative list of eligibles.

■ The language of the City Charter is mandatory, not permissive; it does not admit of a construction that would permit the Civil Service Commission to establish rules denying the very rights to protest set forth by the City Charter itself. ■ The City Charter represents the supreme law of the City and County of San Francisco, subject only to conflicting provisions in the United States and California Constitutions or to preemptive state law. (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248].) The provisions of the City Charter supersede all municipal laws, ordinances, rules or regulations inconsistent therewith. (*Ibid.; Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 840 [93 Cal.Rptr. 525]; *Currieri* v. *City of Roseville* (1970) 4 Cal.App.3d 997, 1001 [84 Cal.Rptr. 615].) Since it is in conflict with section 8.323 of the San Francisco City Charter, the restrictive language in Civil Service Commission rule 9.16 may not be employed by the Civil Service Commission to deny appellants a right to protest clearly set forth in the provisions of the City Charter itself. Under those provisions, appellants' protests should not have been rejected by the Civil Service Commission on the sole ground that appellants had failed to request inspection of the composite ratings during the earlier two-day inspection period, in accordance with rule 9.16.

This matter must therefore be reversed and remanded for determination of whether the protests of appellants were timely and properly submitted

under section 8.323 of the City Charter; for resolution of what the proper procedures are for consideration of appellants' protests by the Civil Service Commission under the City Charter and all applicable rules and regulations enacted in accordance therewith; and for the issuance or denial of mandamus on the basis of these new findings and conclusions.

The judgment is reversed.

Scott, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied December 6, 1985, and respondents' petition for review by the Supreme Court was denied February 19, 1986.