[No. C052981. Third Dist. June 4, 2007.]

SACRAMENTO COUNTY ALLIANCE OF LAW ENFORCEMENT et al., Plaintiffs and Appellants, v.
COUNTY OF SACRAMENTO, Defendant and Respondent.

1014

COUNSEL

Goyette & Associates, Inc., Paul Q. Goyette and Tawni O. Parr for Plaintiffs and Appellants.

Robert A. Ryan, Jr., County Counsel, and Michele Bach, Deputy County Counsel, for Defendant and Respondent.

OPINION

ROBIE, J.—Randy Spitze, a civil service employee with the County of Sacramento (the county), was passed over for two temporary assignments to positions in a higher classification, despite the fact he was on the eligible list for the higher classification and the employees chosen for those assignments apparently were not. Spitze and the employee organization that represents him (Sacramento County Alliance of Law Enforcement or SCALE) appealed one of the temporary assignments to the county's Civil Service Commission (the commission), but the commission refused to hear the appeal, contending it was not within the commission's appellate authority. Spitze and SCALE (collectively plaintiffs) filed a petition for writ of mandate against the county in the superior court, but the court denied relief.

 On appeal, we are faced with two questions. First, is a civil service position "vacant" when the employee regularly assigned to that position is on vacation or temporarily assigned to another position? Second, does the commission have jurisdiction to hear an administrative appeal regarding an allegedly unauthorized temporary civil service appointment? As we will explain, the answer to the first question is "no," but the answer to the second question is "yes." Even though the second answer is favorable to plaintiffs, we will nonetheless affirm the judgment in favor of the county in its entirety because plaintiffs have not shown the trial court erred in denying them writ relief against the *county* based on the *commission's* refusal to hear the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

SCALE is the exclusive bargaining representative for certain county employees, including criminal investigators working in the welfare fraud unit of the county's Department of Human Assistance. At all times relevant to this action, Spitze was employed as a criminal investigator II in the welfare fraud unit and was a member of SCALE.

In 2003, Spitze took a promotional examination for the position of supervising criminal investigator (SCI) and was placed on the eligible list for

that classification. Although it is not clear from the record, presumably Spitze remained on that list through 2005.

In April and May 2005, SCI Mike Moody temporarily assigned Bryan Tully, who apparently was *not* on the eligible list for the SCI classification, to work as an SCI in Moody's unit while Moody was serving as the acting assistant chief investigator. That assignment was made pursuant to the collective bargaining agreement (or memorandum of understanding) between the county and SCALE, which specifically provides for temporary "out-of-class assignments" of 45 days or less.[1]

In May 2005, following Tully's temporary assignment to work as an SCI, SCALE filed an appeal on behalf of Spitze with the commission, claiming that Tully's appointment violated section 7.7(a) of the County of Sacramento County Civil Service Rules (the rules), which provides that "[t]emporary appointments . . . shall be made from appropriate eligible lists whenever possible." The commission refused to hear the matter, asserting that its jurisdiction was limited and did not include "a general power to hear employment-related appeals." Shortly thereafter, on referral from the commission, the county's Department of Employment Services and Risk Management responded that Tully's assignment "was not a 'temporary appointment' as described in [the] Civil Service Rules . . . because there was no vacancy." Rather, it was a temporary, out-of-class assignment consistent with the memorandum of understanding between SCALE and the county.

In July 2005, SCI Lori Babbage temporarily assigned Robert Waugh, who, like Tully, was apparently not on the eligible list for the SCI classification, to work as an SCI in her unit while she took a two-week vacation.

In September 2005, plaintiffs commenced this action by filing a writ petition in the superior court, seeking a declaration that Spitze was improperly denied temporary appointments to the SCI positions filled by Tully and Waugh and that any violation of the rules is appealable to the commission.

In April 2006, the trial court denied the petition. The court concluded that "Section 7 [of the rules] appl[ies] . . . to the filling of 'vacancies' " and "[t]he positions Mr. Waugh and Mr. Tully filled were not 'vacant' within the meaning of the rule [because] both had existing incumbents." The court also concluded "the Commission . . . had no jurisdiction to consider the matter" because "[n]o rule specifically makes the matter of short-term out of class assignments appealable to the Commission" and because "the short term

---

[1] An out-of-class assignment occurs "[a]ny time a department requires an employee in writing to work in a higher classification." An employee in an out-of-class assignment is entitled to a 5 percent pay differential.

assignments at issue here" were not " 'improper action' " subject to appeal under section 71-B(d) of the Sacramento County Charter (the charter).

The court entered judgment against plaintiffs in May 2006, and they filed a timely notice of appeal.

DISCUSSION

I

*Temporary Appointments*

The first question on appeal is whether the assignment of a county civil service employee to a position in a higher classification during the temporary absence of the employee regularly assigned to that position constitutes a "temporary appointment" within the meaning of the rules, such that appropriate eligible lists must be used whenever possible. The answer is "no."

■ "[T]he proper interpretation of civil service rules is subject to de novo review as a pure question of law" under "the same general rules [of construction and interpretation] that are used for statutes." (*Dobbins v. San Diego County Civil Service Com.* (1999) 75 Cal.App.4th 125, 128–129 [89 Cal.Rptr.2d 39].) "When deciding what a statute means, courts seek to determine what effect the legislative body that enacted it intended to achieve. [Citation.] To make this determination, courts begin with the text of the statute, because the words used are the best evidence of legislative intent. [Citations.] Unless there is reason to believe that a special or technical meaning was intended, courts give the words of the statute their usual, ordinary meaning." (*People v. Anderson* (2002) 28 Cal.4th 767, 785–786 [122 Cal.Rptr.2d 587, 50 P.3d 368] (conc. & dis. opn. of Kennard, J.).)

■ Section 7.7(a) of the rules provides that "[t]emporary appointments may be used to fill *vacancies* in positions which will not exceed one day less than six months, and which are not recurrent. . . . Such appointments shall be made from appropriate eligible lists whenever possible." (Italics added.) The rules define "vacancy or vacant position" as "[a]ny unfilled position in the civil service." (Rules, § 15.56.)

Plaintiffs contend a civil service position is "vacant" whenever the day-to-day activities associated with the position are not being performed, even if it is due to the temporary absence of a person regularly assigned to that position. We disagree. In the context of public service and employment, the term "vacancy" has a special meaning that defeats plaintiffs' argument.

 " 'An office is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event. A newly created office, which is not filled by the tribunal which created it, becomes vacant on the instant of its creation, an existing office without an incumbent being vacant whether it be a new or an old one.' " (*People v. Chaves* (1898) 122 Cal. 134, 138 [54 P. 596].) "[A]n incumbent is one who is in the present possession of an office." (*Miller v. Board of Supervisors of Sacramento County* (1864) 25 Cal. 93, 98.)

Under this long-established meaning of the term "vacancy," Moody's SCI position was not "vacant" while he was temporarily assigned to serve as the acting assistant chief investigator, and Babbage's SCI position was not "vacant" while she was on vacation. Despite their temporary absences, both positions continued to be occupied (filled) by legally qualified incumbents who had the lawful right to continue in their positions until the happening of some future event, such as discharge, transfer, resignation, or promotion.

Because the positions were not "vacant" during the temporary absences of Moody and Babbage, section 7.7(a) of the rules did not apply, and Spitze was not entitled any preference with respect to the temporary assignments to those positions simply because he was on the eligible list for the SCI classification. For that reason, the trial court correctly denied plaintiffs relief on this aspect of their writ petition.

## II

### The Commission's Appellate Jurisdiction

The second question on appeal is whether the commission had jurisdiction to hear an administrative appeal in this case. This time, the answer is "yes."

 "A civil service commission created by charter has only the special and limited jurisdiction expressly authorized by the charter." (*Hunter v. Los Angeles County Civil Service Com.* (2002) 102 Cal.App.4th 191, 194 [124 Cal.Rptr.2d 924].)

 Section 71-B(a) of the charter, which is part of article XVI (personnel administration), provides that the commission "shall establish rules regarding the selection of employees for, and the classification of, civil service positions." Rule 7.7(a) of the rules is one such rule. Section 71-B(d) of the charter provides that the commission "shall make final decisions on appeals involving alleged improper action under, or the denial of any rights provided by, this article or the rules adopted thereunder. The commission's authority in

this regard pertains only to examinations and other matters under the jurisdiction of the commission pursuant to this article."

As we have noted, section 7.7(a) of the rules provides that temporary appointments used to fill certain short-term vacancies must be made from appropriate eligible lists whenever possible. Plaintiffs' appeal to the commission alleged the chief of the welfare fraud unit had violated that rule by temporarily appointing Tully to an SCI position instead of Spitze. Thus, plaintiffs' appeal necessarily "involv[ed] alleged improper action under, or the denial of a[] right[] provided by, . . . the rules adopted" by the commission. Moreover, there appears to be no question that the matter of temporary appointments to civil service positions is a matter "under the jurisdiction of the commission pursuant to" article XVI of the charter, within the meaning of the second sentence of section 71-B(d) of the charter.

In concluding section 71-B(d) of the charter did not give the commission the power to hear plaintiffs' appeal, the trial court concluded no appeal was available because "neither the relevant provisions of the Charter or of the Civil Service Rules make the short-term assignments at issue here improper action," "Nor do they provide [plaintiffs] with any rights in regard to such assignments." The flaw in this reasoning is that the trial court failed to note the word "alleged" in section 71-B(d) of the charter. Because the commission has the power to hear an appeal of an improper action or a denial of rights that is merely *"alleged,"* and not necessarily *actual*, a complaining party need not (as the trial court appeared to suggest) demonstrate the validity of its complaint in order to establish the power of the commission to hear its appeal in the first place.

Our interpretation of section 71-B(d) of the charter as authorizing the commission to hear plaintiffs' appeal in this case is supported by *Chavez v. Civil Service Com.* (1978) 86 Cal.App.3d 324 [150 Cal.Rptr. 197]. In *Chavez*, the issue was whether the commission had jurisdiction over an appeal by a probationary employee who alleged he was released from employment as a result of discriminatory practices. (*Id.* at p. 326.) Since the charter contains a provision forbidding such discrimination (§ 71-F(f)), this court concluded the employee's appeal was proper under section 71-B(d) of the charter as an appeal involving "improper action under (or the denial of a right provided by) section 71-F(f)." (*Chavez*, at p. 331.) This court further determined that the second sentence of section 71-B(d) of the charter was consistent with the court's analysis of the first sentence and did not negate its conclusion. (*Chavez*, at p. 331.) Similar reasoning compels a similar result here.

The county places some significance on the fact that, under section 9.3(b) of the rules, the commission has "no jurisdiction to consider [a] matter"

"[u]nless [the] action is specifically made appealable to the Commission by these Rules." Since the rules "do not authorize an appeal from a decision to assign or appoint one applicant/employee in lieu of another applicant/employee," the county reasons, the commission had no jurisdiction to hear plaintiffs' appeal.

■ The flaw in that argument is that the commission has no power to promulgate a rule that divests the commission of a duty imposed on it by the charter. (See *Stuart v. Civil Service Com.* (1985) 174 Cal.App.3d 201, 206 [219 Cal.Rptr. 770] [municipal charters "supersede all municipal laws, ordinances, rules or regulations inconsistent therewith"].) Section 71-B(d) of the charter provides that the commission "*shall* make final decisions on appeals" that fall within the scope of that section. (Italics added.) We have determined that plaintiffs' appeal fell within the scope of section 71-B(d) of the charter. Accordingly, the commission had a duty to hear that appeal, and section 9.3(b) of the rules could not relieve the commission of that duty.

Our conclusion that the commission had a duty to hear plaintiffs' appeal does not, however, entitle plaintiffs to reversal of the trial court's judgment. "In reviewing a trial court's decision, we review the result, not the reasoning." (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 653 [80 Cal.Rptr.2d 409].) Thus, the ultimate question here is whether plaintiffs have shown the trial court erred in denying their writ petition. They have not.

■ "Code of Civil Procedure section 1085 permits the issuance of a writ of mandate 'to compel the performance of an act which the law specially enjoins.' [Citation.] The writ will lie where the petitioner has no plain, speedy and adequate alternative remedy, *the respondent* has a clear, present and usually ministerial duty to perform, and the petitioner has a clear, present and beneficial right to performance." (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 101 Cal.App.4th 1317, 1325 [125 Cal.Rptr.2d 1], italics added.) Here, even assuming plaintiffs demonstrated they had a clear, present, and beneficial right to have the commission hear their appeal, the only respondent they named in their writ petition was the county itself. ■ "The courts long have drawn a distinction between the county as a corporate entity and the autonomy of various elements of a county's governmental structure," including county civil service commissions. (*Department of Health Services v. Kennedy* (1984) 163 Cal.App.3d 799, 802 [209 Cal.Rptr. 595].) ■ "[A] writ of mandate issues against ministerial officers of a government entity who are responsible for administrative steps through which the performance of the act sought is effected—not against the entity itself." (*Ibid.*) Because the commission "is a charter agency exercising quasi-judicial powers delegated by the county charter," "it has . . . autonomous stature, distinct from the county's corporate identity." (*Ibid.*)

Here, the most plaintiffs established was their right to have the *commission* hear their appeal, but they failed to make the commission a party to their writ proceeding.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.276(a).)

Scotland, P. J., and Raye, J., concurred.