Filed 3/17/23 HT State Travel & Bus Co. v. City of Page, Arizona CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HT STATE TRAVEL & BUS COMPANY, INC., <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> CITY OF PAGE, ARIZONA, <br><br> Cross-defendant and Respondent. | B313590 <br><br> (Los Angeles County Super. Ct. No. BC720628) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gloria L. White-Brown, Judge. Affirmed.

Heath & Yuen, Stephen B. Heath, Steven W. Yuen and Josh P. Davis for Cross-complainant and Appellant.

Freeman Mathis & Gary, Marc J. Shrake, Zachariah E. Moura and Christian E. Foy Nagy for Cross-defendant and Respondent.

Cross-complainant and appellant HT State Travel & Bus Company, Inc., appeals from a summary judgment in favor of cross-defendant and respondent City of Page, Arizona, in this action concerning recreational immunity under Arizona Revised Statutes section 33-1551.[1] Section 33-1551 provides immunity to premises owners from negligence claims by recreational users. On appeal, HT contends: (1) the definition of "premises" under the recreational immunity statute does not include a parking lot; and (2) triable issues of material fact existed as to whether the City was liable for gross negligence. The City contends its evidentiary objections, which the trial court declined to rule on, were not waived and should have been sustained. We conclude recreational immunity under section 33-1551 applied to the parking lot in this case. The City's evidentiary objections were not waived, and in particular, the City's hearsay objection to an online news article submitted by HT must be sustained. The trial court properly granted summary judgment because there was no admissible evidence of gross negligence. Therefore, we affirm.

---

[1] The parties agree Arizona law governs the City's liability for injuries inflicted in Arizona, as was applied by the trial court. No issue has been raised on appeal concerning the choice of forum or the application of Arizona law. Therefore, we also apply Arizona law. All further statutory references are to the Arizona Revised Statutes, unless otherwise stated.

# FACTS AND PROCEDURAL BACKGROUND

## Event and Allegations of Pleadings

In May 2018, Huanxiao Wu and her family were with a tour group to visit Horseshoe Bend within the Glen Canyon National Park in Arizona. A bus owned by HT struck and killed Wu while she was on an unpaved parking lot owned by the City adjacent to Horseshoe Bend.

On September 5, 2018, Tianqiu Peng, individually and on behalf of Wu's estate, Minyi Peng, Pei Weng, Zhang Wu, and Feng Xia Lu (plaintiffs) filed a wrongful death action against HT and the bus driver. On June 19, 2019, HT filed a cross-complaint against the United States of America and Roe defendants for equitable indemnity, contribution, and declaratory relief. HT filed an amendment to the cross-complaint substituting the City for a Roe defendant.

## Motion for Summary Judgment and Supporting Evidence

On May 12, 2020, the City filed a motion for summary judgment of the cross-complaint on the ground that recreational immunity applied under section 33-1551, because the accident location was a "premises" covered under the statute and the plaintiffs were "recreational users." In addition, the City argued that HT had not alleged and could not show the City was liable for gross negligence.

The City submitted two declarations from Kyle Christiansen, who had been the City's director of Public Works for the previous three and one-half years, and who was

3

responsible for evaluating safety issues, traffic flow, and maintenance in the location of the accident. Historical satellite photos showed that for more than 15 years cars have parked in the area of the accident. The location has parking spots demarcated by concrete blocks, as well as designated bus loading and unloading zones for tour companies to use. No admission or parking fees are charged to Horseshoe Bend visitors to enter or use the parking area, and cars and buses historically used the parking lot in an orderly fashion. He had no knowledge of, and had never heard any report of, any vehicle accident involving pedestrians at the accident location before the present case. He also had no knowledge of any personal injury involving a vehicle or any reports of unsafe conditions at the accident location.

The City provided deposition testimony of two police officers as well. Sergeant Cody Miller stated that in 15 years of service as an officer for the City, he had never received a report of any incident at the location of the accident in which pedestrians were put in danger. Detective Terry Tereick stated that in five years of service with the Page Police Department, he had never been to the location of the accident for any other traffic-collision incident.

**Opposition to Summary Judgment and Supporting Evidence**

HT opposed the motion for summary judgment on the ground that the recreational immunity statute did not apply, or if it did apply, the City failed to show the exception for gross negligence did not apply. HT asserted that a parking lot was not included in the definition of "premises" covered by the

4

recreational immunity statute and the accident did not occur on premises used by a "recreational user." In addition, HT argued the City was grossly negligent, because the City was aware of the dangerous condition for years as a result of failing to comply with design elements mandated in the City's zoning code.

HT submitted the declaration of John Diehl, who is the principal architect and owner of Diehl Group Architects. Diehl has 40 years of professional practice experience as an architect and is licensed in 14 states, including Arizona and California. He prepared an investigation report, which HT submitted as well.

The investigation report stated that the location of the accident was an unpaved parking lot. The City's 2001 zoning code established off-street parking and loading requirements that required parking lot surfaces to be paved with asphalt or concrete and provide signage and striping to fully delineate parking facilities and drives, including stop signs and one-way signs as necessary. In Diehl's opinion, the parking lot lacked signage, striping, or other devices to separate and direct pedestrian and vehicle movement. Six months after the accident in this case, the City updated the zoning code to provide more detailed requirements for off-street parking and loading.

To reach his conclusions, Diehl relied on the City's 2001 zoning ordinance. He relied on several months of City Council agendas and meeting minutes, including a March 2016 agenda item stating that representatives from the National Park Services and the City Council had agreed to explore potential improvements to the Horseshoe Bend overlook, including identifying potential improvements to the design of parking, trails, safety, and other features. He relied on a November 2016 intergovernmental cooperative management agreement between

the National Park Service and the City to address health and safety concerns and protection of resources at the Horseshoe Bend trail area for one year. The agreement noted visitation to Horseshoe Bend had increased 200 percent in recent years, including a significant increase in tour bus and other traffic, causing resource degradation and public health concerns. He relied on statements attributed to City Council member Levi Tappen and the police department in online news articles. In addition, he relied on a February 2017 project proposal for improvements at Horseshoe Bend, including plans for parking and traffic circulation that proposed: defined internal circulation for private tours; delineated parking layout, wheel stops, and striping; and separate parking for commercial and large vehicles.

HT submitted deposition testimony of Officer Robert Napier suggesting the parking lot was a highly congested area with vehicles and pedestrians constantly walking and driving through. HT also submitted deposition testimony of Officer Trevor Campbell, who estimated the parking lot would probably fit 100 cars.

HT submitted deposition testimony of the bus driver involved in the accident. The parking lot was unpaved and not entirely flat, but he was able to control the bus and did not think there was any problem with the surface of the parking lot that led to his bus striking Wu. The driver stated that the parking lot was a loop where vehicles could only travel in one direction, but there were no official signs, marking, or lined spaces in the parking lot. He estimated that approximately 10 buses and about 100 cars could fit in the parking lot. If he had seen Wu, he could have stopped the bus before hitting her.

6

HT submitted deposition testimony of plaintiff Pei Weng. Weng stated that the parking lot had only one opening or entrance that was connected to the entrance for the sightseeing spots.

HT submitted deposition testimony of Ryan Loop, the driver of another tour bus at the location. Loop estimated the parking lot held more than 100 cars. The parking lot was unpaved, with boulders, and no marked parking spaces. Wu was walking around the parking lot taking pictures with her family. As a bus driver, he tells people not to take pictures in parking lots because it's dangerous to be taking pictures with all the vehicles parked there.

HT requested that the trial court take judicial notice of several documents, including the statements attributed to City Council member Tappan and the police department in the online news article. HT also requested judicial notice of documents attached to Diehl's report, specifically the documents purporting to be the 2001 zoning ordinance, City Council agendas, the November 2016 intergovernmental cooperative management agreement, and the February 2017 proposed project scope of work for Horseshoe Bend improvements.

**Reply, Objections, and Trial Court Ruling**

The City filed a reply arguing that the recreational immunity statute applied, and no triable material issue of fact had been raised as to whether the City engaged in gross negligence that was a direct cause of the decedent's injury. The evidence showed the City had no knowledge of accidents or potential accidents at the parking lot, and there was no evidence

that any conduct by the City was the direct cause of the accident. The City argued Diehl was not a qualified expert under Evidence Code section 720, and his investigation report contained multiple levels of hearsay.

The City filed objections to HT's request for judicial notice, including the documents attached to Diehl's report. In particular, the City objected to taking judicial notice of the following purported items: City Council agendas and meeting minutes, statements in online news articles, a 2001 zoning ordinance, an intergovernmental cooperative management agreement, and the proposed scope of work for Horseshoe Bend improvements. The City also argued that the items lacked probative value.

The City also filed objections to HT's exhibits in support of summary judgment. Among the City's objections, the City objected to Diehl's declaration on the grounds based on lack of expert qualifications, improper expert opinion, lack of foundation, relevance, and lack of probative value. The City objected to Diehl's summary of his investigation report on the same grounds. The City objected to exhibits attached to Diehl's investigation report and hyperlinked website articles on the grounds of hearsay, improper expert opinion, lack of foundation, relevance, and lack of probative value.

The trial court issued a tentative ruling to deny the motion for summary judgment on the ground that the City failed to show the parking area constituted "premises" or that Wu was a recreational user under the recreational immunity statute. The court declined to rule on HT's request for judicial notice or the City's evidentiary objections on the ground that they were not

germane to the court's ruling on the motion for summary judgment.

A hearing was held on the summary judgment motion on March 12, 2021. After taking the matter under submission, the court granted the motion for summary judgment. The court found that under section 33-1551, the parking lot constituted "premises" and the decedent was a "recreational user." The court entered judgment in favor of the City on March 26, 2021. The court denied HT's motion for new trial, and HT filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

" 'We review the grant of summary judgment de novo. [Citation.] We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." [Citation.] A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action.' " (*Howard*

9

*Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1113.)

" 'In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties. [Citation.] In this case, we liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor.' " (*Howard Entertainment, Inc. v. Kudrow, supra,* 208 Cal.App.4th at pp. 1113–1114.)

## Evidentiary Objections

The trial court expressly declined to rule on the City's evidentiary objections, because the evidence was not relevant to the court's decision. HT contends that because the trial court declined to rule on the objections, all of the evidence submitted in opposition to summary judgment must be considered on appeal. In response, the City renews its objections to Diehl's declaration, investigative report, and the documents attached to Diehl's report, including online news articles.

Written objections that the trial court fails to rule upon are not waived on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 526.) The reviewing court applies a de novo standard of review to evidentiary objections that the trial court failed to rule upon which are raised again on appeal. (*Id.* at p. 535.) We therefore review the City's evidentiary objections de novo.

Online news articles containing statements attributed to a City Council member and the police department are clearly inadmissible hearsay, and the City's objection to the news articles must be sustained. (Evid. Code, § 1200.) Statements in

10

the news articles submitted by HT are not considered in evaluating the propriety of summary judgment.  We need not address the City's remaining evidentiary objections, because even if the evidence were admissible, no triable issue of fact has been shown.

## Recreational Immunity

HT contends Arizona's recreational immunity statute does not apply, because the premises covered by the statute do not include the parking lot in this case.  We conclude the parking lot is covered under the statute.

### A.  Standards for Statutory Interpretation

The principles governing statutory interpretation relevant to our analysis in this case are the same under both Arizona and California law.  Issues of statutory interpretation are reviewed de novo. *(BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC* (2015) 236 Ariz. 363, 365; *In re D.S.* (2012) 207 Cal.App.4th 1088, 1097.)  "Our primary goal in interpreting statutes is to effectuate the legislature's intent." (*Rasor v. Northwest Hospital, LLC* (2017) 243 Ariz. 160, 164; see *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 713 (*Ennabe*).)  "Words in statutes should be read in context in determining their meaning." (*Stambaugh v. Killian* (2017) 242 Ariz. 508, 509; see *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384–1385.)  "Words and phrases shall be construed according to the common and approved use of the language" but "[t]echnical words and phrases and those which have acquired a peculiar and appropriate

11

meaning in the law shall be construed according to such peculiar and appropriate meaning." (§ 1-213; see *Sacramento County Alliance of Law Enforcement v. County of Sacramento* (2007) 151 Cal.App.4th 1012, 1017.) The courts strictly construe section 33-1551, because it limits common-law liability by conferring immunity. (*Armenta v. City of Casa Grande* (2003) 205 Ariz. 367, 368–369.)

### B. Section 33-1551

At the time of the events in this case, section 33-1551(A), provided in relevant part: "A public or private owner . . . of premises is not liable to a recreational or educational user except on a showing that the owner . . . was guilty of wilful, malicious or grossly negligent conduct that was a direct cause of the injury to the recreational or educational user."[2]

Recreational use statutes are designed to alter common law rules by limiting the duty of care that property owners owe recreational users. (*Bledsoe v. Goodfarb* (1991) 170 Ariz. 256, 259.). The purpose of section 33-1551 is "to encourage

---

[2] The Arizona Legislature made nonsubstantive amendments to the relevant portions of section 33-1551 in 2022. Section 33-1551(A) currently provides in full: "A public or private owner, easement holder, lessee, tenant, manager or occupant of premises is not liable to a recreational user or educational user except on a showing that the owner, easement holder, lessee, tenant, manager or occupant was guilty of wilful, malicious or grossly negligent conduct that was a direct cause of the injury to the recreational user or educational user. A recreational user or educational user accepts the risks created by the user's activities and shall exercise reasonable care in those activities."

landowners to open certain lands to recreational users by limiting liability for injuries to those users." (*Ibid*.)

### C. Premises

HT contends that the definition of "premises" in Arizona's recreational immunity statute does not include the parking lot in this case where the death occurred. We disagree.

At the time of the incident, the former statute defined premises as "agricultural, range, open space, park, flood control, mining, forest, water delivery, water drainage or railroad lands, and any other similar lands, wherever located, that are available to a recreational or educational user, including paved or unpaved multiuse trails and special purpose roads or trails not open to automotive use by the public and any building, improvement, fixture, water conveyance system, body of water, channel, canal or lateral, road, trail or structure on such lands." (former § 33-1551(G)(4).)[3]

The statute applies to park lands available to a recreational user, including any improvement on the land. A parking lot is an improvement. Arizona law often defines improvements to include parking areas. (See § 41-790(4) [" '[i]nfrastructure' " includes "nonbuilding improvements . . . such as . . . sidewalks and parking lots"]; § 42-14156(B)(3) [for purposes of utility valuation, " '[r]eal property improvements' " includes parking lots]; § 9-463(8) ["improvements" includes streets; "street" includes all land

---

[3] In 2022, the Legislature amended the phrase "recreational or educational user" in section 33-1551(G)(4) to "recreational user or educational user."

in the right-of-way, including "parking space"].)  We conclude the plain meaning of improvement includes the parking lot in this case.

HT contends that because the statute expressly applies to special purpose roads that are not open to automotive use by the public, by negative implication, the statute must exclude areas open to automotive use.  This is incorrect.  The statute does not provide an exhaustive list of the areas considered to be premises.  The word "including" is a term of enlargement, so expressly naming certain areas that are covered by the statute does not exclude areas that are not specifically mentioned.  (See *State ex rel. Dep't of Econ. Sec. v. Torres* (2018) 245 Ariz. 554, 558; *Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1227–1228; *People v. Hooper* (2019) 40 Cal.App.5th 685, 692–693.)

More importantly, the statute expressly includes all roads in the definition of premises, including special purpose roads that are not open to automotive use by the public.  If the statute had not expressly listed special purpose roads, it could have been argued that recreational immunity did not apply to special purpose roads because they are unavailable to a recreational user.  The statute expressly includes all types of roads, however, even special purpose roads that are not available for automotive use by the public.  The trial court properly concluded that the statute applied to the parking lot in this case.

**Gross Negligence**

HT contends the evidence showed a triable issue of fact as to whether the City was liable for gross negligence, which is an exception to the recreational immunity statute.  We conclude

14

there was no evidence from which the trier of fact could find gross negligence.

"A negligence claim requires proof of four elements:  '(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages.' " (*Noriega v. Town of Miami* (2017) 243 Ariz. 320, 326 (*Noriega*).)  To show gross negligence requires evidence of gross, willful, or wanton conduct.  (*Ibid*.)  Section 33-1551(G)(2) does not apply to grossly negligent conduct, which the statute defines as "a knowing or reckless indifference to the health and safety of others."

" 'A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result.' [Citations.]  Gross negligence 'is different from ordinary negligence in quality and not degree.' [Citation.]  It is 'action or inaction with reckless indifference to the . . . safety of others.' " (*Noriega, supra*, 243 Ariz. at p. 328.)

" 'As between negligence and gross negligence, negligence suggests "a failure to measure up to the conduct of a reasonable person." ' [Citations.]  And, '[g]ross negligence generally signifies "more than ordinary inadvertence or inattention, but less perhaps than conscious indifference to the consequences," ' which 'falls closer to [the] recklessness standard' that 'usually involves a conscious disregard of a risk.' " (*Noriega, supra*, 243 Ariz. at pp. 328–329.)

15

"Generally, whether gross negligence occurred is a question of fact for a jury to determine. [Citation.] 'In order to present such an issue to the jury, gross negligence need not be established conclusively, but the evidence on the issue must be more than slight and may not border on conjecture.' [Citation.] Summary judgment is appropriate 'if "no evidence is introduced that would lead a reasonable person to find gross negligence." ' " (*Noriega*, *supra*, 243 Ariz. at p. 329.)

In this case, the City submitted evidence from its director of Public Works and two police officers, all of whom worked several years for the City, that they were not aware of any collisions between pedestrians and vehicles in the parking lot. This was sufficient to shift the burden of proof to HT, who did not introduce any evidence creating a triable issue of fact as to whether the City was aware of a health and safety risk caused by the condition of the parking lot.

In addition, there was no evidence from which a reasonable person could find the City's conduct was grossly negligent. The fact that the parking lot was unpaved did not create an unreasonable risk of bodily harm; whether the parking lot was paved had no bearing on where pedestrians stood in the parking lot or where vehicles were driven. The lack of signage directing the flow of traffic did not involve a high probability of substantial risk, as traffic in the parking lot followed a one-way loop without any signage directing vehicles in one direction. There was no evidence that the lack of striping delineating parking spaces in the lot created an unreasonable risk of bodily harm. For example, there was no evidence that striping would have prevented Wu from standing in the flow of traffic. There was no evidence of any method or requirement to direct pedestrians who

16

were getting out of their vehicles in the parking lot that would have prevented a recreational user from moving into the flow of traffic while taking a photo. No trier of fact could conclude that the City was grossly negligent in allowing the conditions in the parking lot.

The trial court properly granted summary judgment on the issue of gross negligence, because there was no admissible evidence that the City had any knowledge of a health and safety risk presented by the condition of the parking lot, and there was no evidence that the conditions of the parking lot identified by HT presented an unreasonable risk of bodily harm with a high probability that substantial harm would result.

## DISPOSITION

The judgment is affirmed. City of Page, Arizona, is awarded its costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


We concur:


BAKER, Acting P. J.


KIM, J.

17